UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>AIRGAS USA, LLC,<br><br>Defendants. | No. 2:24-cv-03547-DJC-AC<br><br>**ORDER** |

This is an action under the Clean Water Act, in which Plaintiff Central Valley Eden Environmental Defenders, LLC alleges Defendant Airgas USA, LLC has failed to properly file certain permits and comply with regulations related to stormwater discharge and other water pollutants. Airgas USA, LLC seeks dismissal of the Complaint, arguing that Plaintiff lacks standing. For the reasons set forth below, the Court finds that Plaintiff fails to plead independent factual allegations sufficient to establish associational standing under Article III, and hereby GRANTS Defendant's Motion to Dismiss on standing grounds. Plaintiff may refile a First Amended Complaint within fourteen days.

**BACKGROUND**

Airgas USA, LLC ("Airgas") operates a facility in Sacramento, California, that produces chemical gases. (ECF No. 1, hereinafter "Compl." ¶¶ 8, 93.) According to

1

Central Valley Eden Environmental Defenders, LLC ("EDEN"), Airgas stores and handles industrial chemicals and materials outdoors that are exposed to storm water, eroded by wind, and otherwise contaminate the surrounding watershed. (*Id.* ¶ 96.) During rain events, EDEN believes that storm water flows over the surface of Airgas's Sacramento facility and collects suspended sediment, dirt, metals, and other chemicals and toxic pollutants, transporting those materials into the facility's storm water channels where they are ultimately discharged into the Sacramento River. (*Id.* ¶¶ 97, 98, 100.)

Airgas's Sacramento facility is subject to certain regulations under the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251–1387, including regulations under the State of California's Industrial General Permit. (*See id.* ¶¶ 9, 10, 33.) The CWA makes it unlawful to discharge "any pollutant by any person" except as authorized by and in compliance with other sections of the CWA, including, as relevant here, 33 U.S.C. § 1342. 33 U.S.C. § 1311(a). The CWA authorizes the Administrator of the Environmental Protection Agency ("EPA"), as part of the National Pollutant Discharge Elimination System ("NPDES"), to "issue a permit for the discharge of any pollutant, or combination of pollutants . . ., upon condition that such discharge will meet either (A) all applicable requirements under [the CWA], or (B) . . . such conditions as the Administrator determines are necessary to carry out the provisions of this chapter." *Id.* § 1342(a)(1). Alternatively, the States, with EPA approval and continuing supervision, may issue the permits themselves and take primary responsibility for the permitting scheme. *See id.* § 1342(b); *S. California All. of Publicly Owned Treatment Works v. U.S. Env't Prot. Agency*, 853 F.3d 1076, 1078 (9th Cir. 2017). California has authority to issue its own NPDES permits. *S. California All. of Publicly Owned Treatment Works*, 853 F.3d at 1078.

////

////

The CWA also provides a regulatory scheme for municipal and industrial stormwater discharges that are federally regulated as pollutants,[1] including, as relevant here, any "discharge associated with industrial activity." 33 U.S.C. § 1342(p)(2)(B);[2] *see also Env't Def. Ctr., Inc. v. U.S. E.P.A.*, 344 F.3d 832, 841–43 (9th Cir. 2003). Under California's NPDES program, rather than provide individual permits authorizing a specific entity to discharge a pollutant in a particular place that is issued after an informal agency adjudication process, *see Alaska Cmty. Action on Toxics v. Aurora Energy Servs., LLC*, 765 F.3d 1169, 1171 (9th Cir. 2014), California has issued a general permit that applies to entire classes of hypothetical dischargers following notice-and-comment rulemaking. *See id.* (citing 40 C.F.R. § 122.28(b)). This general permit requires an entity seeking coverage to submit a "notice of intent" to discharge a pollutant under the general permit, *see id.* (citing 40 C.F.R. § 122.28(b)(2)).

> First, permittees must implement best management practices ("BMPs") to reduce or prevent pollutants in storm water discharges. Second, the Permit forbids discharges of storm water that cause or contribute to an exceedance of applicable Water Quality Standards in the applicable water quality or basin plan. Third, permittees must develop a Storm Water Pollution Prevention Plan ("SWPPP") in compliance with Section B of the Permit, which includes filing annual reports with the Regional Water Quality Control Board.

---

[1] As rain falls, the water collects contaminants and impurities from the ground that then make their way into drains and sewers, which eventually lead to federally protected bodies of water, and these sewers are sometimes used to directly discharge contaminants or waste. *See Env't Def. Ctr., Inc. v. U.S. E.P.A.*, 344 F.3d 832, 840 (9th Cir. 2003). The CWA defines "pollutants" as "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water . . . ." 33 U.S.C. § 1362(6).

[2] Specifically, "[s]torm water means storm water runoff, snow melt runoff, and surface runoff and drainage[,]" 40 C.F.R. § 122.26(b)(13), and "[s]torm water discharge associated with industrial activity means the discharge from any conveyance that is used for collecting and conveying storm water and that is directly related to manufacturing, processing or raw materials storage areas at an industrial plant[,]" *id.* § 122.26(b)(14). The term "storm water discharge associated with industrial activity" is quite broad; though it "does not include discharges from facilities or activities excluded from the NPDES program[,]" it does include, "storm water discharges from industrial plant yards; . . . manufacturing buildings; storage areas (including tank farms) for raw materials, and intermediate and final products; and areas where industrial activity has taken place in the past and significant materials remain and are exposed to storm water." *Id.*

*San Francisco Baykeeper v. Levin Enters., Inc.* ("*S.F. Baykeeper*"), 12 F. Supp. 3d 1208, 1212 (N.D. Cal. 2013) (citation omitted).

EDEN alleges that Airgas has violated the CWA by failing to comply to comply with California's Industrial General Permit.  More specifically, EDEN alleges that Airgas has violated the Industrial General Permit by: (1) submitting a deficient SWPPP (Compl. ¶¶ 163-67); (2) providing incomplete monitoring reports (*id.* ¶¶ 168-72); (3) falsifying annual reports (*id.* ¶¶ 173-77); (4) failing to implement best conventional treatments for conventional pollutions ("BCT") and best available technology for toxic and non-conventional pollutants ("BAT") when implementing its best management practices ("BMP") at the Sacramento facility (*id.* ¶¶ 178-82); (5) discharging contaminated stormwater (*id.* ¶¶ 183-92); and (6) failing to properly train employees (*id.* ¶¶ 193-96).

EDEN seeks declaratory, injunctive, and civil relief from this Court.  (*Id.* at 32-33.)  Specifically, EDEN requests the Court to: (1) declare that Airgas has violated the CWA (*id.* at 32); (2) order Airgas to comply with the NPDES permitting requirements in the Industrial General Permit and the CWA (*id.* at 33); (3) enjoin Airgas from discharging pollutants until Airgas has developed and implemented an adequate SWPPP or storm water pollution prevention plan that uses appropriate, including BCTs for conventional pollutants and BATs for toxic and non-conventional pollutants (*id.*); (4) order Airgas to pay $57,617 in civil penalties per day per each CWA violation (*id.*); (5) require Airgas to take appropriate actions to restore the quality of the United States waters impaired by activities at the Sacramento Facility (*id.*); (6) order Airgas to pay EDEN's reasonable attorney's fees and costs (including expert witness fees); and (7) award any other relief that may be just and proper.  Finally, due to disagreements about the veracity of statements submitted by Airgas's counsel, EDEN seeks sanctions. (ECF No. 26.)  Both the issues of dismissal and of sanctions have been fully briefed, and both motions were ordered submitted without oral argument.  (ECF No. 35).

////

## LEGAL STANDARD

A party may move to dismiss a complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *See Nat'l Fed'n of the Blind of Cal. v. Uber Techs., Inc.*, 103 F. Supp. 3d 1073, 1078 (N.D. Cal. 2015). A Rule 12(b)(1) jurisdictional attack may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (citation omitted). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer* ("*Safe Air*"), 373 F.3d 1035, 1039 (9th Cir. 2004). "[The] party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996).

## DISCUSSION

### A. Airgas Brings a Facial Challenge Under Rule 12(b)(1)

In its briefing, Airgas asserts that it brings both a factual and facial challenge to EDEN's allegations. (ECF No. 18, hereinafter "MTD," at 3-4.) However, upon review, the Court agrees with EDEN (ECF No. 22 at 2) that Airgas's motion does not call into question any of the underlying facts, as would be needed for a factual attack. For example, Airgas contends that EDEN has not identified a local, affected member affected by Airgas' alleged actions (MTD at 10-11), has not described a concrete, particularized, and imminent harm (*id.* at 12-13), nor established any causality between an alleged act by Airgas and an alleged injury suffered by an organizational member of EDEN (*id.* at 14-15.) These arguments go to the face of EDEN's standing argument and do not propose or identify any conflict in EDEN's factual allegations. *See Safe Air*, 373 F.3d at 1039. Accordingly, Airgas's motion is properly understood as a facial attack because it claims that the Complaint's allegations, on their face, are not sufficient to invoke this Court's jurisdiction, which the Court can resolve based

5

solely on the assertions alleged in EDEN's Complaint. *See Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020).

### B. EDEN Fails to Properly Plead Any Alleged Harms

The Supreme Court has "established that the irreducible constitutional minimum of standing contains three elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To establish Article III standing,

> a plaintiff must show (1) that it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Ass'n of Irritated Residents v. U.S. Env't Prot. Agency*, 10 F.4th 937, 943 (9th Cir. 2021) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,* 528 U.S. 167, 180–81 (2000)). An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Friends of the Earth, Inc.*, 528 U.S. at 181 (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

"The party invoking federal jurisdiction bears the burden of establishing the[ ] [three] elements [of standing]." *Lujan*, 504 U.S. at 561 (citations omitted). But standing is not dispensed in gross. *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996). "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. In addition, "a plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc.*, 528 U.S. at 185 (first citing, as an example, *City of Los Angeles v. Lyons* ("*Lyons*"), 461 U.S. 95, 109 (1983); and then citing *Lewis*,

518 U.S. at 358 n.6)).  Though a plaintiff may establish standing to sue for damages based on past exposure to harm, where, as here, the plaintiff seeks prospective or injunctive relief, the plaintiff must then establish that she suffers from the "continuing, present, adverse effects."  *Lujan*, 504 U.S. at 564 (quoting *Lyons*, 461 U.S. at 102 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974))).  However, "private plaintiffs, unlike the Federal Government, may not sue to assess penalties for wholly past violations, but . . . [may sue] for violations that are ongoing at the time of the complaint and that could continue into the future if undeterred."  *Friends of the Earth, Inc.*, 528 U.S. at 188 (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 106–08 (1998)).

      EDEN seeks to assert associational standing.  (*See* Compl. ¶¶ 12–21.)  Ultimately, EDEN does not establish standing due to its failure to plead sufficient facts to find that EDEN has suffered or will continue to suffer any alleged harm to its aesthetic, informational, and recreational interests.  See *Lujan*, 504 U.S. at 561; *cf. Civil Rts. Educ. & Enf't Ctr. v. Hosp. Prop. Tr.*, 867 F.3d 1093, 1098–1099 (9th Cir. 2017) (finding pleadings adequate to survive a facial attack).  That is, EDEN fails to "demonstrate a concrete and particularized injury caused by the defendant and redressable by the court [that] ensures that federal courts decide only 'the rights of individuals,' and that federal courts exercise 'their proper function in a limited and separated government[.]'"  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (first quoting *Marbury v. Madison*, 5 U.S. 137, 170 (1803); and then quoting John G. Roberts, Jr., *Article III Limits on Statutory Standing*, 42 Duke L. J. 1219, 1224 (1993)).

      Indeed, EDEN's deficient Complaint is functionally identical to its First Amended Complaint in *Central Valley Eden Environmental Defenders, LLC v. Champion Home Builders, Inc.* ("*Champion Home*"), No. 2:23-CV-01273-DJC-DB, 2024 WL 115386 (E.D. Cal. Jan. 10, 2024), in which this very Court rejected the exact Article III standing argument that EDEN presents in the instant case.  In *Champion Home*, this Court found that EDEN had failed to identify a member that would give it

7

1  organizational standing, although this Court gave the EDEN leave to amend its First
2  Amended Complaint to properly allege facts that would confer it standing.  *Id*.  EDEN
3  then submitted a Second Amended Complaint with new factual allegations to
4  strengthen its Article III standing argument.  *Champion Home*, No. 2:23-CV-01273-
5  DJC-DB, 2024 WL 115386 (ECF No. 32) (E.D. Cal. Jan. 10, 2024).  However, the
6  standing section of the Complaint filed in this case is identical to the deficient First
7  Amended Complaint in *Champion Home* and does not incorporate any of the
8  amendments made in EDEN's Second Amended Complaint in that case.
9         For the first element of individual standing, EDEN pleads an injury to the
10 aesthetic, recreational, and scientific use and enjoyment of "the Sacramento River, a
11 tributary of the Sacramento-San Joaquin River Delta Waterways[,]" where Plaintiff's
12 members "use those waters and their watersheds for kayaking, canoeing, cycling,
13 recreation, duck hunting, sportfishing, swimming, hiking, bird watching, photography,
14 and nature walks." (Compl. ¶ 15.)  However, EDEN fails to include any independent
15 factual allegations to support this single conclusory statement that one or more of its
16 unidentified members ever again intends to "use those waters and their watersheds
17 for kayaking, canoeing, cycling, recreation, duck hunting, sportfishing, swimming,
18 hiking, bird watching, photography, and nature walks." (*Id.*)  EDEN's Complaint thus
19 does not sufficiently establish that any of its members on their own would have
20 standing, and the Court concludes that EDEN's proffered threadbare allegations are
21 the sort of "formulaic recitation" of the requirements for standing against which the
22 Supreme Court has cautioned.  *See Bell Atl. Corp. v. Twombly* ("*Twombly*"), 550 U.S.
23 544, 555 (2007); see also *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Nor does a
24 complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual
25 enhancement.'" (quoting *Twombly*, 550 U.S. at 557)).
26        EDEN also asserts it has suffered a concrete injury to its substantive right to the
27 information that Defendants must disclose and report regarding its monitoring and
28 compliance with the CWA and the Industrial General Permit (Compl. ¶ 159).  See

8

*Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F. 4th 825, 832–33 (9th Cir. 2021) (recognizing that the failure to follow the procedural elements of an NPDES permits program requiring record retention of discharge sampling and filing reports can be "the subject of a CWA citizen suit" and that disclosure, monitoring, and reporting requirements "serve the public's substantive interest in clean water and the environment[,] [which] [t]he CWA elevated [as a cognizable] interest by providing a cause of action to affected citizens." (citing *Lujan*, 504 U.S. at 578; 33 U.S.C. § 1365(a), (g))). However, EDEN has failed to establish how any of its members have an intended use for any information that was not disclosed, so EDEN cannot show how the alleged injuries affect it or its members "in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. Without such allegations, EDEN asserts nothing more than a generalized grievance, which has never been enough. *See, e.g.*, *Carney v. Adams*, 592 U.S. 53, 59 (2020); *Lance v. Coffman*, 549 U.S. 437, 439–41 (2007) (per curiam) (detailing the Supreme Court's "lengthy pedigree" of rejecting standing based on generalized grievances).

For instance, unlike the members of the environmental organization in *Inland Empire Waterkeeper*, 17 F.4th 825, EDEN has not pled in its Complaint allegations establishing that its members have a need for accurate information or for the information to be disclosed, such as members not being able to swim in the water because of fear that there has been increased pollution, which cannot be confirmed or denied without the disclosed information, or by members not being able to provide reliable information for use in educational or commercial settings without the disclosed information. *See* 17 F.4th at 833–34. Nor, for that matter, has EDEN ever identified when one of its members has used the Sacramento River in the past, or when one of its members intends to use the Sacramento River in the future, or how Plaintiff's members have had their activities along the Sacramento River impacted by the CWA violations at the Sacramento facility. *See*, *Summers v. Earth Island Inst.*, 555 U.S. 488, 495 (2009). Thus, EDEN has failed to allege specific facts showing not only

that the Sacramento River was in fact being threatened by pollution and discharge stemming from the Sacramento Facility, but also that one or more of EDEN's members would thereby be directly affected apart from their special interest in the subject. See *Lujan*, 504 U.S. at 563.

Because EDEN has not established it has Article III standing to bring the instant claims, the Court cannot address the underlying merits of the Complaint.

### C. Sanctions Are Not Appropriate at This Time

EDEN moves for sanctions against Airgas's counsel, alleging that Airgas's pleadings contain numerous factual allegations and other assertions that are unsupported by evidence in the record nor by supplemental evidentiary filings. (ECF No. 26 at 1.) These include defense counsel's statements that: (1) plaintiff's counsel misrepresented plaintiff's counsel's unavailability to meet and confer prior to the filing of the Motion to Dismiss; (2) EDEN has only one member and no associational members; (3) EDEN's alleged sole member, Eric Lucas, is an Alabama, rather than California, resident; (4) EDEN is currently affiliated with a New Mexico-based LLC; and (5) various merits-related allegations raised in EDEN's Complaint are unsupported or improperly pled. (*Id.* at 6–13.) The Court finds that, at this juncture, there is no basis for imposing sanctions against defense counsel.

The Court has wide latitude to impose sanctions against parties, including levying sanctions under Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and the Court's inherent authority. Rule 11 sanctions may be appropriate where an attorney files a motion (1) to cause unnecessary delay or needlessly increase the cost of litigation; (2) that is frivolous; (3) without evidentiary support for its factual contentions; or (4) contains false or misleading statements of fact. Fed. R. Civ. P. 11. Under 28 U.S.C. §1927, sanctions may be appropriate when filings are "unreasonabl[e] and vexatious[]." 28 U.S.C. § 1927.

Plaintiff's counsel contends that defense counsel improperly implied that Plaintiff's counsel was unavailable to meet and confer prior to the filing of the Motion

to Dismiss filed on January 17, 2025. (ECF No. 26 at 6–7.) Defense counsel recognizes that Plaintiff's counsel indicated that he was unavailable to meet on January 15 through 17, 2025, but identifies that due to the reassignment of this matter from Magistrate Judge Allison Claire to the undersigned on January 15 (ECF No. 14), January 15 through 17 were the only days available before the preexisting January 17 deadline for filing the Motion, and notes that only the undersigned, and not Magistrate Judge Claire, requires parties to meet and confer prior to filing a Motion to Dismiss. (ECF No. 30 at 4–6.) While it is generally a requirement that the parties meet and confer for matters before the undersigned, the failure of counsel to meet and confer prior to the filing of the Motion to Dismiss and defense counsel's (technically correct) representation that Plaintiff's counsel was unavailable to do so, are not egregious and certainly do not warrant sanctions.

      On EDEN's second and third allegation regarding organizational standing and the disputed identity of Eric Lucas, the Court again finds sanctions are not warranted. As discussed above, EDEN's Complaint does not identify any member by name or description that would confer it Article III standing. In light of this omission, defense counsel investigated and, apparently erroneously, identified Eric Lucas as being the sole member of EDEN. (*See, e.g.*, MTD at 1–2.) Defense counsel further implied, but did not definitively state, that Eric Lucas was a resident of Alabama and not California, meaning he could not confer standing to sue on behalf of EDEN. (*Id.* ("Eric Lucas [] *appears to be* an Alabama Resident." (emphasis added).) Plaintiff's counsel disputes that Eric Lucas is an Alabama resident. (*See, e.g.*, ECF No. 21 at 7.) Prior to the filing of Plaintiff's Motion for Sanctions, defense counsel filed a supplemental document detailing its original identification of Eric Lucas and acknowledging that, in light of Plaintiff's counsel's briefing, it had mistakenly identified a different Eric Lucas. (ECF No. 24.) Due to Plaintiff's deficient Complaint that failed to identify a member of its organization therefore prompting defense counsel to investigate, and defense counsel's acknowledgment of its error prior to the filing of Plaintiff's Motion for

1 | Sanctions, the Court finds that this incident does not rise to the level of sanctionable
2 | activity.
3 |     Relatedly, Plaintiff's counsel asserts that defense counsel unduly claimed that
4 | EDEN was "currently" affiliated with an unnamed New Mexico LLC.  (ECF 21 at 8.)
5 | However, the language actually used by defense counsel was EDEN "*appears*
6 | affiliated with another LLC . . . in New Mexico."  (MTD at 2.)  Again, defense counsel is
7 | implying, rather than definitely stating a fact.  Plaintiff's assertion is incorrect, and
8 | defense counsel's wording does not warrant sanctions.
9 |     The remaining assertions by Plaintiff pertain to disagreements regarding the
10 | merits of the underlying Complaint and Motion to Dismiss.  Because the Court finds
11 | that Plaintiff does not having standing to bring the instant suit, the Court declines, at
12 | this juncture to adjudicate the merits of the case or any related claims.

**CONCLUSION**

For the reasons set forth above, the Court GRANTS Defendant's Motion to Dismiss (ECF No. 18) Plaintiff's Complaint (ECF No. 1) WITHOUT PREJUDICE. Additionally, the Court DENIES Plaintiff's Motion for Sanctions (ECF No. 26.)  Plaintiff may refile a First Amended Complaint within 14 days, if it so chooses.

IT IS SO ORDERED.

Dated: **April 18, 2025**

*/s/ Daniel J. Calabretta*
Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC 5 – Eden24cv03547.mtd/ms